# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-01-00652-CV
---

**Nancy Broadhurst, Appellant**

**v.**

**Employees Retirement System of Texas, Appellee**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. GN100561, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**
---

Nancy Broadhurst appeals the district court=s judgment affirming a final order by the Board of Trustees for the Employees Retirement System of Texas (ABoard@ or AERS@) denying her application for occupational disability retirement benefits (Aretirement benefits@). On appeal, Broadhurst continues to challenge the Board=s order, alleging that it was arbitrary and capricious and incorrectly interpreted the statute governing her claim. We will affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Broadhurst was employed as a Child Protective Services (ACPS@) specialist for the Texas Department of Protective and Regulatory Services. This position required Broadhurst to receive, investigate, and evaluate reports of child abuse. In performing this primary task, she regularly carried car

seats, young children, their belongings, and case files. Additionally, she traveled county-wide by car to schools, homes, and other facilities to interview children and family members. On October 18, 1995, Broadhurst was injured at work when she sat down and leaned back in a chair that did not have a back cushion. Shortly afterward, Broadhurst heard a loud popping sound in her back and began experiencing pain on her way home from work. Initially, the pain in her back was not debilitating. Approximately one year later, the pain in her back became too great for her to continue working; she subsequently resigned from her job and submitted an application to ERS for retirement benefits. The Board denied her application because it found her disability did not meet the definition of Aoccupational disability@ in the ERS statute. *See* Tex. Gov=t Code Ann. ' 811.001(12) (West 1994).[1] Broadhurst appealed the Board=s decision. After a contested case hearing, an administrative law judge (AALJ@) found, in contrast to the Board=s decision, that

---

[1] Broadhurst=s appeal was pending before September 1, 2001 and is governed by the law in effect at that time. The definition of Aoccupational disability@ was amended in 2001. *See* Act of May 23, 2001, 77th Leg., R.S., ch. 1231, ' 1, 2001 Tex. Gen. Laws 2827, 2827. The amendment became effective September 1, 2001. The current definition reads: A>Occupational death or disability= means death or disability from an injury or disease that directly results from a specific act or occurrence determinable by a definite time and place, and directly results from a risk or a hazard peculiar to and inherent in a duty that arises from and in the course of state employment.@ Tex. Gov=t Code Ann. ' 811.001(12) (West Supp. 2002).

Broadhurst qualified for retirement benefits. The Board refused to adopt the ALJ=s findings of fact and conclusions of law and denied retirement benefits. Broadhurst sought judicial review of the Board=s order. The district court affirmed the Board=s order denying benefits.

On appeal, Broadhurst alleges that the district court erred in affirming the ERS order on the grounds that the order (1) was arbitrary and capricious because it disregarded the findings of her treating physician in favor of the findings of the ERS Medical Board; (2) was arbitrary and capricious because it applied the definition of occupational disability, specifically the requirement that her disability arise from an injury that Adirectly results from a specific act or occurrence,@ differently than the Board had applied the requirement to prior, similarly-situated applicants; and (3) incorrectly interpreted the requirement in the definition of occupational disability that the disability directly result from an Ainherent risk or hazard peculiar to a duty that arises from and in the course of state employment.@ *Id*. Broadhurst=s third issue is dispositive of her appeal; thus, we will confine our analysis accordingly.[2] *See* Tex. R. App. P. 47.1.

## DISCUSSION

Broadhurst=s application for retirement benefits is governed by chapters 810-815 of the Texas Government Code. *See* Tex. Gov=t Code Ann. '' 810.001-815.5112 (West 1994 & Supp. 2002).

---

[2] Broadhurst=s first two issues concern matters addressed in recent opinions by this Court. *See Flores v. Employees Ret. Sys.*, 74 S.W.3d 532 (Tex. App.C2002, pet. filed); *Langford v. Employees Ret. Sys.*, 73 S.W.3d 560 (Tex. App.CAustin 2002, pet. filed).

At the time her claim arose, section 811.001(12) defined Aoccupational disability@ to mean a disability Afrom an injury or disease that directly results from a specific act or occurrence determinable by a definite time and place, and directly results from an inherent risk or hazard peculiar to a duty that arises from and in the course of state employment.@ *Id.* at ' 811.001(12). The statute contains two prongs: (1) the injury must directly result from a specific act or occurrence determinable by a definite time and place and (2) the injury must directly result from an inherent risk or hazard peculiar to a duty that arises from and in the course of state employment. *Id*. Broadhurst=s claim hinges on the interpretation of Ainherent risk or hazard peculiar to a duty@ in the second prong of the statute.

In determining the appropriate interpretation of a statute, our objective is to give effect to the Legislature=s intent. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). AAn administrative agency=s construction or interpretation of a statute, which the agency is charged with enforcing, is entitled to serious consideration by reviewing courts, so long as that construction is reasonable and does not contradict the plain language of the statute.@ *Employees Ret. Sys. v. Jones*, 58 S.W.3d 148, 151 (Tex. App.CAustin 2001, no pet.). However, when the interpretation does not involve technical or regulatory matters within the agency=s expertise but requires the discernment of legislative intent, we give less deference to the agency=s reading of a statute. *Rylander v. Fisher Controls Int=l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.CAustin 2001, no pet.).

Thus, the task of statutory construction here involves a question of law: what did the Legislature intend when it used the phrase Adirectly results from an inherent risk or hazard peculiar to a duty@

4

arising from state employment?  We look at phrases in context, based on the ordinary meaning of the words.  *Rylander*, 45 S.W.3d at 302.  We will give effect to all the words of a statute and not treat any statutory language as surplusage if possible.  *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987).

### A*Inherent Risk or Hazard Peculiar to a Duty*@

The Board rejected the ALJ=s conclusion that Broadhurst=s disability directly resulted from a risk or hazard peculiar to her duties of state employment and substituted its own finding that: AThe risk or hazard associated with the universal act of attempting to sit in a chair is one that applies broadly to anyone who sits down.@  Based on its interpretation of the statute, the Board requires applicants for occupational disability retirement benefits to prove that their injury was caused by a risk or hazard that is *both* inherent in *and* peculiar to their job duties.  Broadhurst, however, urges a disjunctive interpretation of the statute.  Broadhurst suggests that the phrase Aan inherent risk or hazard peculiar to a duty@ requires that her incapacity result from *either* (1) a risk that is inherent to a job-related duty *or* (2) a hazard that is peculiar to a job-related duty.  Thus, she argues she only has to prove one of the statutory criteria, not both.  She further asserts that because her duties as a caseworker included lifting over twenty pounds, climbing, stooping, standing, and driving, the risk of back injury was *inherent* to her primary job responsibilities and thus sufficient to qualify for benefits.

This issue has been addressed by this Court on at least three separate occasions. *See Flores v. Employees Ret. Sys.*, 74 S.W.3d 532 (Tex. App.CAustin 2002, pet. filed); *Langford v. Employees Ret. Sys.*, 73 S.W.3d 560 (Tex. App.CAustin 2002, pet. filed); *Bond v. Employees Ret. Sys.*, 825 S.W.2d 804, 806 (Tex. App.CAustin 1992, writ denied). In *Bond*, we held that in order to satisfy the second prong of the statute, two prerequisites must be satisfied. *Bond*, 825 S.W.2d at 806. First, the employee=s injury must directly result from a risk or hazard that is inherent in a duty of the employee that arises from and in the course of her state employment. *Id.* Second, the inherent risk or hazard *must also be* peculiar to such a duty. *Id.* It would be inconsistent with our holding in *Bond* to adopt the interpretation that Broadhurst urges.

Broadhurst argues in the alternative that even if the Board=s interpretation of the statute is correct, Broadhurst qualifies for benefits because her disability was the result of a risk that was both inherent in and peculiar to her duties as a CPS specialist. We construe her argument as a challenge to whether the Board=s decision on this point was supported by substantial evidence.

In reviewing an agency decision, the court must decide whether the decision was supported by substantial evidence in the record. *See* Tex. Gov=t Code Ann. ' ' 815.511(b) (providing for review of ERS decisions by substantial evidence); 2001.174 (West 2000) (providing for review of agency decisions). This is a limited standard of review that affords great deference to the agency in its field of expertise. *Railroad Comm=n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). A court applying the substantial evidence standard of review may not substitute its judgment for that of the agency. *See* Tex.

6

Gov=t Code Ann. ' 2001.174; *Mireles v. Texas Dep=t of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). The issue for the reviewing court is not whether the agency=s decision was correct, but whether the record demonstrates some reasonable basis for the agency=s action. *See Mireles*, 9 S.W.3d at 131; *City of El Paso v. Public Util. Comm=n*, 883 S.W.2d 179, 185 (Tex. 1994). Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them. *See Torch Operating,* 912 S.W.2d at 792-93. AIn fact, an administrative decision may be sustained even if the evidence preponderates against it.@ *Mireles*, 9 S.W.3d at 131. Before reviewing the evidence at issue here, a discussion of recent case law interpreting Aan inherent risk or hazard@ is helpful to understanding the context of Broadhurst=s claim and our resolution of the issue.

We explained in *Flores* that a risk or hazard is peculiar to a duty to the extent that the duty imposes a risk or hazard different from the usual or normal risks encountered by a person *not* engaged in that duty. *Flores*, 74 S.W.3d at 553. In so holding, this Court expressly rejected as overly restrictive the argument that a risk or hazard is peculiar only if it is different from the normal risks encountered by someone engaged in the *same* duty. *Id*. at 552-53. We noted that Flores=s job as a social worker aide was defined by the primary task of transporting children in a car, and that in performance of this primary task, she spent between seven and twelve hours each day, or seventy-five percent of her working hours, in a car. *Id.* Thus, she faced a much higher risk of being injured in a car accident by virtue of her job than other drivers. *Id*. at 553. The increased risk of injury resulting from an automobile accident faced by Flores was therefore an inherent risk that was peculiar to her work-related duties. *Id*.

7

In *Langford*, Calvin Langford, an employee of the Texas Department of Criminal Justice, was injured when he slipped on a wet floor while performing his duties as a food service manager at one of the Department=s correctional facilities. *Langford*, 73 S.W.3d at 563-64. The Department=s training manual addressed the need for floors to be scrubbed daily and specifically instructed employees regarding the prevention of slips, trips, and falls. *Id.* The manual also required that Awet floor@ signs be posted immediately after cleaning and recommended that both employees and inmates working in the food service area wear non-skid shoes. *Id.* Further, because Langford was a supervisor, he frequently risked injury by walking into wet areas to perform his duties. *Id.* These facts led this Court to conclude that Langford=s injury was peculiarly related to his unique duties as a food service manager. *Id.*

In both *Langford* and *Flores* the employee was injured while performing a task peculiar to his or her primary job responsibilities. A person engaged in other types of employment would face a lower risk of injury due to automobile accident or slipping on a wet floor than did these two employees. Broadhurst asserts that her case is analogous to both *Flores* and *Langford* in that, because her duties as a CPS specialist included activities that could cause back problems (including carrying children, car seats, and case files), she was subjected to an increased risk of suffering a back injury. Therefore, her back injury, which resulted from sitting and leaning back in a chair, should properly be characterized as resulting from a risk inherent and peculiar to her primary job responsibilities. The test, however, is not whether *other acts* Broadhurst engaged in at work may have made her more susceptible to injury, but whether the act that caused the injury was peculiar to her duties as a CPS specialist.

8

The standard for determining whether a risk is inherent in and peculiar to one=s duties of employment is whether that duty imposes a risk or hazard different from the usual risks encountered by a person *not* engaged in that duty. *Langford,* 73 S.W.3d at 570; *Flores*, 74 S.W.3d at 552 (clarifying *Bond*). Broadhurst ran no heightened risk of suffering injury as a result of sitting down in a chair than does any worker who sits and stands throughout the course of the day. In other words, a person *not* engaged in work as a CPS specialist runs the same risk of injury resulting from sitting in a chair as did Broadhurst. Moreover, although Broadhurst=s job involved lifting and carrying children and case files, she did not suffer her injury while performing these tasks but, instead, while sitting down and leaning back in a chair.

With this in mind, we will review Broadhurst=s evidence. The only witness at the contested case hearing, Broadhurst testified that she injured herself when she sat down and leaned back in a chair which had no back cushion. She also offered into evidence documentation confirming the nature of the accident, including an accident report and a first report of injury form submitted to the state workers= compensation commission. She further testified that as part of her job she was required to sit down and interview children and that this was the most Asalient@ part of her job. As we have just discussed, this evidence simply does not establish that her disability arose from an Ainherent risk or hazard peculiar@ to her duties as a CPS specialist. Thus, we agree with the Board=s characterization of Broadhurst=s accident at the hearing that A[t]here is nothing distinctive in someone moving from one chair to another.@ Suffering an injury while sitting down and leaning back in a chair is a risk that was not peculiar to Broadhurst=s state duties.

9

We conclude there was substantial evidence in the record demonstrating a reasonable basis for the Board=s decision that Broadhurst did not satisfy the second prong of section 811.001(12) and, thus, did not qualify for retirement benefits. Therefore, the district court correctly affirmed the Board=s order. Broadhurst=s third issue is overruled.

## CONCLUSION

Because we find the Board correctly applied the second prong of section 811.001(12) defining occupational disability and that Broadhurst was unable to satisfy this prong, we affirm the judgment of the district court.

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: July 26, 2002

Publish